Good morning, Your Honors. Good morning, Judge Rollinson. Good morning. May it please the Court, John Amanoff for Tracy Cain, the petitioner and appellant in this case. With me at council table, I'm joined by Mark Drozdowski, also of the Public Defender's Office. Will you be making all the comments, or are you sharing time? I will, Your Honor, unless something goes terribly wrong, I guess. Thank you. Unless you pass out, he'll come to the podium. Something along those lines. Okay. Thank you. Your Honors, there are several things I'd like to discuss with you this morning. My plan is to begin with the pending request to expand the Certificate of Appealability. Specifically, I'd like to start by speaking about Uncertified Claim No. 2, which is our Ineffective Assistance of Counsel, or IAC, at the penalty portion of the trial. After that, I'd like to focus on Uncertified Claim No. 1, which is IAC at the guilt portion of the trial. And after that, I'd like to speak about our Certified Claim, which is a Notice Claim. I do intend to— Maybe you should concentrate on the Certified Claim, and then we'll go from there. As you wish, Your Honor. Yeah, that's fine. Your Certified Claim is very narrow, as I understand it. It's the Notice Issue. That's right, Your Honor. It does bleed into our IAC guilt claim, but you're correct. It is quite narrow. So beginning then with our Certified Claim, the Notice Issue. Mr. Cain was deprived of notice with respect to the attempted rape special circumstance. Contrary to the prosecutor's representation to the trial court, this issue was not brought up until the prosecutor's closing argument at the guilt portion of the trial, literally giving Mr. Cain absolutely no opportunity to respond to it with any substantive evidence. Well, except he has a lawyer, and the lawyer said that he knew. And I'm assuming—I don't know if you do capital cases in trial as well as here. Yes, Your Honor. But sort of Capital Litigation 101 is all the special circumstances that are like this. The language is of the crime or the attempted commission of the crime, whether it's burglary, robbery, rape, or any of those. And, I mean, that was the first thing that I looked at, and I thought, well, everyone knows that. And the lawyer admitted that he knew that. It's a lesser-included offense anyway. It is a lesser-included offense, but it does require an additional burden on the prosecutor to prove specific intent to commit rape. Yeah, but we're dealing with notice at this stage. Right, so— And it's constructive notice, is it not? I don't think so, Your Honor, because it requires more on behalf of the prosecutor. The defense has to be on notice of what the prosecutor actually has to prove. And the addition of the attempted rape changes the burden of proof. But going back to Your Honor, Judge Callahan's point, the problem with— I mean, the lawyer knew it. And, really, a lawyer shouldn't be doing capital cases if they don't know that, reading the special circumstance, and they're all like that. Well, Your Honor, this is somewhat analogous to the situation in Wiggins where the lawyer represented that he knew what was in the substance of the mitigation evidence that was not presented at trial, and the Supreme Court rejected that as post hoc rationalization based on the facts of the case. And I think the same is true here. But let's look specifically at what the information actually said. The information cited to a statute, 190.2A17, that specific statute doesn't say rape. There are actually 13 subcategories, one of which is rape. But the allegation was that the murders were committed during—while engaged in rape. That's why the limiting language of that information is so important, because it's the limiting language that tells the lawyer that rape is being charged. But it doesn't say, or attempted rape, which is different than if you look at the robbery charge, where the robbery special circumstance specifically alleges robbery in the commission of robbery or in the attempted commission of robbery. The difference in those two charges is very significant. And if you look at the defense that was presented, the defense lawyer never offers any defense to the substantive charge of attempted rape. The entire defense is based on, did penetration occur? That's what the experts testify to. And, in fact, the lawyer, the defense lawyer himself, elicited that information. But you don't have to have penetration for an attempted rape. Exactly. And because the defense was entirely focused on penetration— And the woman was on the bed, undressed, below the waist. Yes, Your Honor. Displayed, right? That's correct. Now, the defense alleged that multiple people had entered that house, and Mr. Cain didn't touch that woman. Well, but that's different than being on notice of the rape or the attempted rape type of thing, because my understanding, you know, and I know this sort of bleeds into everything else, but who tried the case? The defense lawyer? It's not either of you, right? No, Your Honor. His name is Willard Wicksell. He's a lawyer and venturer. He was confronted with the fact that Mr. Cain had admitted to the police that he was in the house, but he was there to commit, he was there to steal. And he also admitted that he went back to the house to clean things up, right? I don't actually agree with that categorization. What did he admit to the police? He admitted that he was in the house. When it happened. When it happened. He did not admit that he went into the house for the purpose of stealing. The portion of the interrogation where he allegedly said that he, in fact, stole was not on the tape recording. The police officer falsely testified that the tape did not function. Okay, but in terms of the evidence that came in, they said that there was a glitch. So the lawyer's faced with the fact that he's got to deal with the defendant, that the jury has heard that particular evidence. So he can't, you know, well, he could. He could. But he, I think probably you could say reasonably decided that he focused his defense on that he didn't commit the murders. And so he didn't kill anyone, that he only wanted to steal, and that he didn't commit the rape, right? He did argue that he didn't commit the rape. And that he didn't commit the rape. And so, you know, my understanding of this, and I'm pretty sure I'm right on this, is in order to get to the specials, you have to be convicted of first-degree murder first. That's right. Which the theories are all a little bit entangled because how you get to first-degree murder is, in this case, is in the commission of something, right? Yeah, I mean, the defense lawyer conceded first-degree murder, so that was kind of off the table. I mean, this whole case really came down to, after the concession to first-degree murder, the whole case came down to the special circumstances. To save his life. Exactly. Exactly. And that's why the late addition of the attempted rape special circumstance is so troubling. And what's also so troubling is the fact that there was a very obvious mental state defense here, which the trial attorney did not pursue. And that really bleeds into our ineffective assistance of guilt claim. Before you get to that, do you want to say anything about the prosecutorial misconduct by arguing attempted rape? Yes, Your Honor. I assume it's sort of derivative of the first issue. We argue that this issue is a due process issue, it's a prosecutorial misconduct issue, it's an ineffective assistance of counsel issue. I think the prosecutor knew full well that the information did not allege attempted rape. They actually removed that after the preliminary hearing and never charged it again. So this came out of nowhere. And then the prosecutor falsely stated that he had argued this in his opening statement, which wasn't true. I mean, we've put in his entire opening statement into the executive record to establish that. Nevertheless, I do think it's worth looking at this court's decision in the Gott case, where a very similar situation took place and an additional enhancement was added very late in the game. After all the evidence was put in, the defendant was ultimately convicted of that. And this court found prejudice under AEDPA because there was an available mental state defense, exactly the same as here when Mr. Gott had used cocaine just before this crime took place. On that basis, I think that case strongly merits relief on this issue. All right, counsel, we've changed your game plan by going to the certified first. Do you take it from here now on anything else you want to raise? I'd like to speak with you about the IAC penalty claim, if that's all right. I'm just briefly reciting the procedural history of this case. On March 24, 2011, the district court in this case held that 2254D2 didn't bar relief based on the state court record alone. And then citing the Supreme Court's decisions in Landrigan and Richter and also this court's decision in Earp, the district court ordered an evidentiary hearing on 17 claims and subclaims. Eleven days later, the U.S. Supreme Court issued its decision in Pinholster. That case does not discuss 2254D2, and on its face is 100 percent consistent with Landrigan. Nevertheless, the next day, the district court removed the evidentiary hearing and ultimately denied relief on all claims, including those 17 claims and subclaims that Mr. Kane had just been granted a hearing on. Nowhere is the district court's over-reading of Pinholster more clear than with respect to this ineffective assistance to counsel of penalty claim. This claim was presented to the California Supreme Court with all supporting evidence and was denied summarily. So we know under Richter that that's a decision on the merits, and we have to sort of guess what the California Supreme Court did in that situation. I think there's really two possibilities. The first is whether Counsel Wicksell had made a reasonable strategic decision not to present the type of classic mitigation evidence that we present now, specifically brain impairment, social history, and intoxication. With respect to social history, we know that Counsel Wicksell's strategy was to present social history. He actually specifically promised the jury, much like the attorney in the Wiggins case, that they would get a complete picture of Tracy Kane. And he specifically told them, you are the trier of fact. You should know everything. And then the social history presentation was limited to less than 10 transcript pages, which consisted of Kane's stepmother and father saying he was a typical kid and a nice boy and they didn't want to see him executed. We know that his strategy was also to present mental health evidence because he promised the jury that they would hear how Kane's biological mother died at Jonestown and they would hear the psychological effect of that on Kane. He also argued that Kane's brain is impaired. And then they heard quite literally nothing about that except for the fact that she had died at Jonestown. And we also know that his strategy was to present substance abuse. Most of his penalty argument was focused on arguing that Kane was addicted to cocaine and that was what fueled this crime. And Kane quite literally could not control his urge for cocaine. But no evidence was presented of that either. So we know that wasn't his strategy. And then the question becomes, did he execute a reasonable investigation in support of what he ultimately presented? And I think the answer to that is quite clearly no. The red flags in the record indicate that this was not a reasonable investigation. There's just a few points I would like to highlight. I think one of the things you said you faulted him for was not getting the records of when he was in the school. But I wrote myself a little note there on that, that my recollection of when you do a capital case when you're the prosecutor, you have to notice the other side of everything that you're going to bring up as an aggravating factor, which those were things that they said they were going to bring up. So I don't know how the lawyer didn't know about it. I mean, he did know about it, though. He knew that. So that just didn't quite, to say, I mean, the implication of your argument was that he didn't get those records and he knew nothing about those records. He clearly had to know that they were going to put him in as aggravating factors, which the prosecutor would then have to give him copies of that. And there was some in Lemony, I mean, there was some sort of thing with the court saying that those acts could come in as aggravating. Yes, they could come in as aggravating, and I certainly didn't mean to suggest that he didn't know they existed. And he probably had the reports, too. I believe he had a police report. But, I mean, the prosecutor would have to give him that. The prosecutor did give him a sheriff's report about the event, and the event was that Cain had allegedly punched a prison guard and got into a fight with him and then tried to escape, and in fact did escape. But in response to that, counsel failed to get the records from the reform school where Cain was incarcerated at the time. And this is exactly the Rompilla case. In Rompilla, the exact same thing. The prosecutor noticed an aggravating factor. Counsel failed to get a file in support of it. It failed to investigate it. And the Supreme Court held, with ad pedeference, that that was absolutely unreasonable. And that is quite literally what happened here. I mean, first of all, the Supreme Court in Williams held that it was deficient performance not to get prior incarceration records. But in Rompilla, it's even more than that. Because it's an aggravating factor, the onus is on counsel to thoroughly investigate that factor, and he failed to do that here. Like, on the four corners of the case, that's deficient performance right there, and we've met at AEDPA. Had he got those records, the level of mitigation in there is unbelievable. They establish a borderline mental retardation at best. I mean, I would argue mental retardation straight on. His IQ tests in that record are in the mentally retarded range, including a 64 at the age of 14. And at the age of 17, this man is testing at the second grade level in math. It's filled with neuropsych testing, establishing organic brain damage. I just remind the court that counsel Wicksell had hired an expert pre-trial just to examine Cain for guilt-phase defenses. The expert didn't even know this was a death penalty case. And that person recommended getting neuropsych testing. That testing had been done years before and established exactly what the expert warned about, which was organic brain damage. And that brain damage is actually consistent with the brain damage that the Supreme Court found mitigating in the Porter case where it found AEDPA deference, Strickland prejudice. And again, there's no question that counsel knew that Cain was incarcerated at the Adobe Mountain School. He had a 1982 pre-sentence report that indicated that Tracy Cain had undergone psychological and psychiatric counseling at the Adobe Mountain School. So not only in response to knowing that he had undergone this counseling and that it was going to be the basis of an aggravating factor, he then didn't get the records. But do we know what the records would show today? We do, Your Honor, and that's what I was just speaking about. It shows the organic brain damage. It shows the mental retardation. It indicates a chaotic... What about negative information, misconduct, fights, that sort of thing? The records actually, notwithstanding this one aggravating factor about getting into a guard, indicate that he was an excellent inmate. That while at the Adobe Mountain School, his grades improved, not dramatically, but slightly, in that he now had a structured environment. The reports are overwhelmingly positive. Obviously, there is some aggravation in there. I mean, he was in there for a reason. It was confinement. But just as in the Williams case where the Supreme Court said, look, any time you're going to get confinement records, there's going to be some aggravation. That's exactly what happened here, and it's nevertheless deficient performance to not at least examine those records. Counsel? Yes, Your Honor. What's your evidence that it's likely that the presentation of this evidence would have resulted in a different outcome? Well, I think the closest case I can analogize to is the Porter case, where just with the evidence of brain impairment alone, the Supreme Court found Strickland prejudice under AEDPA. What year was that case? What year was it tried, or what year was it the decision? What year was the case you're citing? The Porter decision, I believe, was 2014. It may have been slightly earlier. You know what? Actually, I think I have it. Okay. Porter was 2009. I'm sorry. But the trial was 1988, and Cain's trial was also 1988. So to the extent that it speaks about standards of deficient performance, it's certainly controlling on that front. And it is nonetheless an application of Strickland, so the clearly established federal law is still Strickland, which would control at all portions of this case. Just a couple other red flags I'd like to highlight with respect to the penalty phase. In addition to the Adobe Mountain records, counsel also had in his possession the 1982 pre-sentence report involved a car theft that Cain was involved in with his brother, MacArthur Blair. In that same file were two reports concerning MacArthur Blair, his pre-sentence report, which indicated that Cain's stepmother had abused the children, her non-biological children, which include Tracy Cain, and resented the fact that she had to raise them. Counsel never looked into that, never interviewed MacArthur Blair. In addition, it included Mac's 1984 pre-sentence report. That report indicates that Cain's biological mother was hospitalized for psychiatric reasons. He never got her medical records, never made any attempt to investigate that woman's well-being, what happened to her. I think it's noteworthy that the court in Wiggins found that Wiggins' mother's chronic alcoholism was a red flag. Here we have psychiatric hospitalization, and there was no investigation done in response. Just briefly about mental illness. Cain was never examined for purposes of the penalty phase. There was no psychological workup. What we know is that the expert, Dr. Donaldson, who examined him for the guilt phase, rejected antisocial personality disorder. He said, that's too simple a diagnosis for this man, something more complicated is going on here. He specifically advised the counsel that a neuropsychological exam was necessary and needed to be done. Just talking about the evaluation that he did, we're talking about a two-hour evaluation, maybe three hours at the most. He did four tests, and he interviewed Tracy Cain. Didn't look at any social history records, no medical records, because none were given to him. All he looked at was the DA's file and the DA's investigator's reports about what happened with the crime. Counsel, as you're very much aware, this is an AEDPA case, so we have to look at what the California courts actually did with these very issues. Yes, Your Honor. Help us analyze any defect in the California appellate court's handling of this. Well, as Your Honor knows, the California Supreme Court summarily denied this. So our burden in the California court was to establish a prima facie case. Had we done that, we should have received an evidentiary hearing and a formal briefing. We never got that. So we know that the California Supreme Court denied us on a finding of no prima facie case. These instances alone. What would be the last California case that we should be looking at? I'm sorry, do you mean with respect to this case? What would be the last California decision? The denial decision? So our petition raising all of these issues, supporting facts, was denied in, I believe it was 2000. So that was the decision. What's the last reason decision on these issues? If the California Supreme Court summarily denied it, did another court look at the issues and give a reasoned analysis of them? No, Judge Rawlinson. A question, but better asked by Judge Rawlinson. I'm sorry, I misunderstood, Justice Gellin. Judge Rawlinson, there is no reasoned decision with respect to the IAC penalty claim. In California, a habeas petition is brought to the California Supreme Court. They rarely issue reasoned decisions and only do so after they've issued an order to show cause. We didn't get an order to show cause in this case. So there has been no reasoned decision, no evidentiary hearing. I haven't received depositions, the ability to subpoena anyone, no formal discovery, nothing. So all that we know is that all I have is the allegations that I've made and all the supporting evidence that I've put in that record. So you have your California direct review. The Supreme Court did direct review of this conviction. Exactly, Your Honor. And then you're saying that's what happened on habeas and then you have your federal habeas. Exactly. I thought habeas petitions in California could go to any level of the court. Not in capital cases, Your Honor. Oh, okay. Yeah, capital cases are filed directly in the California Supreme Court. Non-capital cases, you can file them anywhere. Each court has jurisdiction. You can go all the way up the ladder. Okay. I would just like to briefly address prejudice on the IAC penalty claim and then quickly move on to IAC guilt if possible. Because of the very limited presentation and penalty, the DA was able to argue that Cain had good health, he had no mental problems, there was no evidence of mental disturbance, zero. After we did what Dr. Donaldson, the trial expert, suggested and took those results back to him, he signed a declaration that was presented to the state court that said, Cain suffers from chronic and significant mental disturbance present throughout his adult life, including at the time of the offense. With respect to the social history, the DA was able to argue to the jury that Cain had a good home life, had all the advantages. Now we know that he suffered a physically and emotionally abusive childhood, and even the state's expert in the course of our Atkins proceedings found that his social history and mental impairments clearly contributed to his present situation. Finally, with respect to substance abuse, we know that the substance abuse combined with Cain's mental impairments, according to our expert declarations, which have gone unrebutted, clearly contributed to the criminal conduct. I'd like to move on to IAC guilt unless the court had other questions about penalty. Well, wasn't there competing evidence introduced with respect to mental functioning, and the state court was not persuaded by the challenge? There was competing evidence introduced with respect to mental retardation. Yes. Yes, so not with respect to mental retardation. And the state court found that there was insufficient evidence of mental retardation. Of mental retardation itself. Now, we have challenged that in uncertified claim number four, but even if you accept only that Cain is borderline mentally retarded, the Supreme Court found that mitigating in both Williams and Wiggins. Now, we disagree with the state court's opinion. But again, the question under AEDPA is, what is the defect in the state court's determination that would render it unreasonable? Well, the defect, so I just want to make sure that we're separating out the Atkins claim from the IAC penalty claim. The IAC penalty claim has never been adjudicated in any kind of recent decision. You're talking about the mental retardation, Cain. Right, so speaking specifically about the Atkins claim, the defect there was that the state court found our expert to be not credible because he applied the standard error of measurement and Flynn effect to his test studies. Now, the Supreme Court in the Hall decision and also, I'll think of it in a second, excuse me, the Hall decision and also the Brumfield decision said that that was unreasonable. That you have to go with psychological norms and you have to go with the measurements in the field, what the experts do. The Flynn effect is generally accepted as is the standard error of measurement. And in Hall, the Supreme Court actually found it was unreasonable to foreclose mental retardation when someone tested above a 70. I agree that Cain's IQ scores do fluctuate, but I will say that at the age of 14, he did test at a 64, which is significantly below average intelligence within the mentally retarded range and the Adobe Mountain records do establish adaptive deficit dysfunction in all three zones, conceptual, social, and practical. Elsie, you're down to about four and a half minutes. You may wish to reserve or continue. I think I will if that's all right. Thank you. You may do so. We'll hear from the state. May it please the court, good morning. I'm Kim Aarons, Deputy Attorney General, appearing on behalf of Respondent Appellee, the Warden. Terrence. With regard to the notice issue, there was no ambush by the prosecutor here. The original complaint charged attempted rape-murder as a special circumstance allegation. The subsequent information used the language of rape within the meaning of Penal Code Section 190.2, which in itself states either the completed offense or an attempt of the offense. Five days prior to closing argument, before the defense had even presented its case, the prosecutor submitted proposed jury instructions on Friday, April 15th. The jury was in recess until the following Tuesday. On the following Monday, defense counsel moved for production of footprint samples from Mr. Albies, who was also alleged to be present at the scene. And this is because there was evidence of bloody footprints that could not be attributed to Mr. Cain. On Tuesday, April 19th, the parties conferred regarding jury instructions. The defense also called two witnesses that day. On Wednesday, the defense called one witness, and then both parties presented their closing argument. So the defense had, from the previous Friday, when defense counsel received the proposed jury instructions, through the following Wednesday, had ample notice to present a defense to attempted rape, to the attempted rape-murder allegation. The defense did offer a defense to attempted rape. Based on the evidence, he could not argue with any credibility to the jury that no attempted rape occurred. Based on the crime scene, there was evidence that a sexual assault occurred. But what was the evidence that tied it to Mr. Cain? Well, there were hairs found at the scene that matched him. He stated in his interview with the police that there were three other individuals present, but the hairs didn't match the other individuals. One of those hairs was a pubic hair. So clearly something happened. He couldn't stand up and say, well, there was no attempted rape. What he could do was argue that, yes, his client was there. His client was a bad guy. He went in to steal. But he didn't go in to kill. And there were others present. He did argue that. Isn't that right? He did argue that. And that was the best argument he could make, because in order to find any of the special circumstances. Did he concede the rape? He did not concede the rape. He just conceded that something happened there, that there was a sexual assault. But did he concede that his client was responsible for it? He never conceded that his client was responsible. In fact, he requested jury instructions with regard to Mr. Albies and Mr. Mendoza and asked the jury to make a finding, whether they were also present at the scene. And if so, then they could discount the testimony of those two individuals. And what he argued was that those individuals could have committed the crimes and those individuals had the intent to murder. And his client was just there, just along for the ride, and that he only intended to steal. And this is what Mr. Cain told the police during the interrogation. That was the best argument he could make, because if the jury believed that Mr. Cain didn't have the intent to kill, then it had to find all of the special circumstance allegations not true. And if he made a specific argument to attempted rape, there were still other special circumstances that he needed to address, and only one was required to move to the penalty phase. So it wasn't ineffective assistance for him to make this argument. It was a reasonable argument, given that interview statement that Mr. Cain made to the police. Also, Mr. Cain did admit that he went into the house to steal. To be fair, during the interrogation, the investigator asked about the morning after the murders and what happened that morning. Mr. Cain made a statement that he was in there looking for money. It's unclear if Mr. Cain was speaking about the night of the murders or the morning after, because he kept flip-flopping back and forth between the night before, when the murders occurred, and then the morning after, when they went to clean up the crime scene. For example, the investigator said, what happened that morning? And then he said, well, I didn't kill those people. I didn't kill them. It was Mendoza and Lopez. So he blamed others. Is attempted rape a lesser-included offense of rape under California law? Yes, it absolutely is. And, in fact, under California law, and it has been the case since the 1960s, the judge has a sui sponte duty to instruct the jury. Were those in the instruction packets that were being discussed? The attempt in and of itself was not in the instruction packets, and the people did concede on appeal that it was error. But the issue here, there are two different issues, whether there was instructional error and whether there was notice. And so if the attempt instruction was omitted, it may be considered for purposes of notice as to whether the defense had notice. But in this case, given the fact that defense counsel acknowledged he was aware that Penal Code Section 190.2 included the language of attempt, and given the other jury instructions that included attempt, the evidence shows here that he had ample notice. Counsel? Yes, Your Honor. On the notice issue, what's your response to opposing counsel's observation that the information specifically referenced attempted robbery, but did not specifically reference attempted rape? Well, there are two different... There's notice of the charges, but he's not entitled to notice of the prosecution's theory, per se. And so the Calderon case, the Murdashaw case, and also the Lopez case, support our position that notice of felony murder, a notice of a felony murder special circumstance in and of itself is sufficient. And the reason why the prosecutor pursued attempted rape is because the defense was successful in showing that there was no penetration. And so as the case progressed, the prosecutor moved from trying to reach a true finding on rape and moved to attempted rape because of defense counsel. Well, are you saying that they were successful in proving there was no rape because there was a tear that the, I guess it would be the autopsy doctor said or someone that examined the body said they might have done it? Yes. The prosecutor's witness and the medical examiner believed that he was the one that caused the tear, and then the defense also presented a witness who concurred. And therefore, the issue is really whether the act was completed, and that's why the prosecutor changed the theory. Well, I guess it's still... When you say that they successfully proved that there was no evidence of rape, it... I wouldn't say they successfully proved it. They certainly weakened that charge. Absolutely. And just because the jury reached, acquitted him of the rape doesn't mean that it didn't occur. It simply means that the prosecutor didn't meet his burden of proof with regard to that element of penetration. But based on all of the evidence here, it wasn't an ambush, and there certainly wasn't prosecutorial misconduct. Can I take you to the one... One of the uncertified issues has to do with the Atkins claim. And like other claims, it's subject to AEDPA. Pursuant to the California Supreme Court's directions, the Superior Court held an evidentiary hearing and determined that Cain was not mentally retarded. How is that decision contrary to established federal law and unreasonable determination of the facts? Well, it's our position that it was a reasonable determination of the facts, but because the issue was uncertified, we would be happy to submit additional briefing on the issue. I was only prepared to address the certified issues today, and it's our position that until the other issues are certified, they're not properly before the court. And I gather from your brief that you didn't address them in the brief. Correct. I think it says, though, let's see, okay. So if we were to consider it, you're saying you would need to want an opportunity to respond unless we rejected it? Absolutely. And we'd be happy to provide additional points and authorities. So you're not prepared to offer a preliminary response to that? Correct, Your Honor. Or any of the other arguments that were made on the uncertified issues? That's correct, Your Honor. It's my understanding, and please correct me if I'm wrong, but until an issue is certified, it's not before the court, and therefore. Well, the court will have to make an independent determination of whether to certify, and obviously if we were to certify, then we would give the state a chance to respond. I guess I would say I'm not sure. Yes, it's not, but I'm not sure I would say it's a good idea to say that you don't know anything about them. Well, I'm certainly familiar, but I would hesitate to make an argument without preparing points and authorities based on the law, with all due respect. And I apologize. It's my experience, and in my office, it's the experience that the court will generally request additional briefing in the event that it's considering the certified issues. And so based on that practice, I would anticipate an opportunity to prepare those before making that argument. Yeah, but I think that that's correct. Before a court would certify it, you would get that opportunity. I'm not sure that I would say it would be wise oral argument prep not to have thought about them. Is there nothing that opposing counsel said on the uncertified issues that you'd like to say anything about? Well, certainly there was a hearing. I mean, the California Supreme Court considered the Atkins issue. We would submit there's some overlap between mental illness and the claim that he had brain damage. I mean, an examination at that point would be made at the hearing as far as his cognitive impairment and ability to function. And we'd simply submit that there was a full hearing, he had an opportunity to present evidence at that point, and the California Supreme Court found it to be insufficient. And that finding certainly wasn't contrary to any Supreme Court authority, and he hasn't met his burden of showing that. All right, going back to if we were to find that Cain should not have been found guilty of the attempted rape special circumstance, does it follow that the consideration of the special circumstance at the penalty phase was prejudicial? No, it certainly doesn't, based on the Sanders case, which is fully set forth in the briefing, but also because there were two victims here. Mr. Galloway, there were two separate verdicts for the death penalty. So if the court wants to see what the jury would have found if it didn't consider the attempted rape special circumstance, all it needs to do is look at the verdict that the jury reached for Mr. Galloway, and the jury found that the death penalty was appropriate in his case. And also the jury was required to consider the circumstances of the crime, as discussed in the Sanders case. And based on the circumstances of the crime, the jury would have considered the evidence of sexual assault. So certainly this was not a substantial or injurious effect on the jury's verdict. And for the... Counsel? Yes, Your Honor. Having heard the mitigation evidence as articulated by opposing counsel, do you have any view as to whether or not the evidence described would have changed the outcome? I don't believe that the evidence described would have changed the outcome because Mr. Cain had the presence of mind to return to the scene the following day and clean up the evidence that showed that he knew that his conduct was wrong, and he was trying to hide the fact that it occurred by cleaning up fingerprints and then taking evidence and disposing of it. And that in and of itself shows that he had a full understanding that he needed to hide his conduct, and that's what he attempted to do. And unless the Court has any further questions, we would request that the judgment be affirmed. Thank you, Counsel. Thank you. Kareem, you have some reserve time? Amanoff, sorry, excuse me, Mr. Amanoff. Yes, thank you. Your Honor, just a couple of very quick points, and then I would like to just get on to IAC guilt for a minute. There was no attempt at instruction. The fact that there was a period of time between jury instructions being put in and closing argument is irrelevant. Notice is not provided by jury instructions. This Court has been very clear on that in the Gott case, and the Supreme Court has been very clear on that in Cole v. Arkansas. Let me see. But you don't dispute there was about a five-day period that she outlined? I think that's right. I'm not 100% sure about that. I mean, if the State's making that representation, I'm sure that's accurate. Well, are you saying that, I mean, defense counsel said he knew. So are you saying he's a liar, or what? Well, Your Honor, again, I think that Or does defendant get to say because he didn't know, even though his lawyer knew, that is that? I can't I mean, I don't think a whole lot of defendants really understand any of that anyway. That's why they have lawyers. Your Honor, I understand that. I can't cite you to a case that specifically says that Mr. Cain had to be personally notified, but I will say that Cain was offered a life plea before this case went to trial, and had he known that attempted rape was on the table, I can't say that wouldn't have changed something. Maybe defense counsel's advice would have been different to him. You know, I think defense counsel could say to him, Hey, listen, we have a good defense to rape, but if they're going to come at you with attempted rape, there's not a whole lot I can do. But then they had a whole lot of other specials, which they found to be true. And see, that is why the failure to develop a mental state defense is so damaging in this case. I mean, the evidence of intoxication, just from the police reports, if counsel had just reviewed the police reports, he would have had significant evidence of intoxication. What came in at the trial was one witness said that he had observed Cain smoke cocaine, and another witness said that he had given Cain a crack pipe later in the evening and Cain appeared to be intoxicated. He appeared to be under the influence of cocaine. From the police reports, we know that Albus would have said Cain was smoking cocaine all night, nonstop, smoked so much he was shaking. The whole house smelled like cocaine. Clements would have said Cain was so high on cocaine he was acting crazy. Mendoza would have said that Cain was so high that his eyes were bugged open. He was acting 300 times faster than normal. He kept going into a bedroom where he was smoking cocaine and Mendoza could smell it. He was jonesing for cocaine. His only thought was to get more. Mr. Pina's father would have said that Cain came over to his house at about 10.30 and looked high. A guy named Sampson would have said that he saw Cain around 11 o'clock and Cain was so intoxicated that his eyes were bloodshot and Cain was having trouble speaking. Mark Pina would have expanded that Cain was clearly out of it at 12.30 when they spoke. Cain was talking very quickly and he didn't seem to hear or understand things said to him. Even the interrogating officers, when they interviewed Cain a few days later, were shocked by his appearance. They thought he was on dope and they asked him when was the last time he had fixed. We know that cocaine, the effects of cocaine, the extreme disinhibition and predisposition to violence are enhanced by alcohol and marijuana, and we know that given Cain's specific brain impairments, those effects are particularly enhanced by that. So the fact that counsel didn't present a mental state defense when that would have defeated all of the special circumstances, including this attempted rape, is extremely prejudicial. That's what this court found in Gott, which was a notice case, and I'd also refer the court to the Beemore decision, where this court recently found deficient performance for failing to investigate a mental state defense. It didn't find prejudice because of the level of premeditation, but in this case, the prosecutor even conceded that there was no premeditation. This case was tried purely on a felony murder theory. I do want to, just to make sure I didn't say anything misleading, there was an evidentiary hearing in the state court purely on the Atkins issue. That was based on a one-claim petition that was based on Atkins alone. Atkins is a total defense to the death penalty, gets you out of death penalty entirely. Even if, and I maintain that this is not the case, but even if the California Supreme Court... But your obligation is to establish that findings as a result of that evidentiary hearing were contrary to Supreme Court law. I understand that, Your Honor. And you're relying on... Brumfeld and Hull v. Florida. And I think both of those cases established the methods that we used were 100% reliable. Regardless, even if you find that Cain was not mentally retarded, that does not defeat the fact that he has significant brain impairments and at least borderline mental retardation that the Supreme Court found was mitigating in both Wiggins and Williams, where they granted full penalty phase relief. Excuse me. Counsel, your time has expired. Thank you, Your Honor. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Callahan